We're back on record in case number 15-50259, United States v. Doe. Good morning, Your Honors. May it please the Court, Kurt Hermanson on behalf of John Doe. In preparing for oral argument, I'd like to reserve five minutes, please. Just watch your own time, that's fine. Thank you, Your Honor. In preparing for oral argument, I ended up focusing on three things that I'd like to start with. The first is United States v. Doe, so I'd like to draw the Court's attention to that. I submitted that as a 28-J, and that case was decided by this Court on October 21, 2016. You're speaking now of the Doe that focuses on the electronic nature of filings. I am, Your Honor, and I think that case takes care of a lot of the issues. If this panel follows what that panel did, it was a two-to-one panel, but what the majority did in that case, I think they adopt a lot of the arguments that I make. Maybe I could interrupt you, if I could, please. It's not entirely clear to me exactly what relief you want, because I think you're asking for a couple of different things. So there's the docket, and maybe I could just ask exactly what relief are you looking for? So that's a great question. I think it really gets to the heart of the issue, is what is the remedy in this type of case? And I think below and to some extent the government as well, but more so the district judge, views this as an all-or-nothing approach or a black-and-white approach or a binary on-off situation where it's either closure, and when we look at the case law, the issue of closure or sealing. So I understand the court's question, because ideally I would like any mention of 5K1.1 sealed, but if the court finds that it's somehow bound by CBS, the CBS case where they were dealing with Rule 35, or somehow because sentencing documents are part and parcel of a sentencing proceeding and because sentencing proceedings are open, that every single document involved in a sentencing needs to be open, then the remedy that I would be asking for is the modest remedy of thinking first and protecting. No, counsel, you just need to tell me what you want. There's the docket entries. What would you like us to do there, if I could? I really need you to be specific, please. So that's in my AOB. I think it's pages 14 and 15. Pages 14 and 15 of the AOB, it indicates the four documents. And so as far as the motion, the May 15 motion for downward departure, that should be the docket should not reflect 5K1.1. So I would want this court to order that the district court have the clerk modify the docket which district courts do all the time. Right. So just to be clear, there's a docket. Let's call that a table of contents, okay, because I think then we understand what we're talking about as opposed to the filings that are in the docket. Correct. So for the table of contents, there are four entries that you think are unfortunately specific. Is that right? Correct. Because they refer to this particular 5K. 5K1.1. That's the next question, actually. Because at points it seems that you're okay with 5K but not 5K1.1. So as far as the table of contents, that is my biggest concern. And I think it shouldn't even say 5K. Counsel, just what do you want it to say? It shouldn't say 5K. It should say motion for downward departure. Okay. And are there four entries on the docket you're concerned about? Four entries, sorry. And you're concerned about the title of those documents. Is that fair to say? Correct. Document number 35, document number 36, document number 42. Okay, great. Then if a human being walks into the courthouse and looks at the piece of paper, looks at the actual filings, is it your position that those ought to be sealed? Because you filed, I think, one of them manually, as you put it in your brief, not electronically to get around this very problem. I did. Okay. So what do you want us to do with those filings? Are you looking for other relief there? They should be sealed unless there's a specific request for them, and then the district court could consider that under SHELTI. This is not a media case. This is not a case where there's interest. So, yes, those should be sealed. Okay. I appreciate your specificity. Go right ahead with your argument. You were saying that you thought the district court viewed this as an on-off switch. Isn't there some language in the order that indicates that the judge thought that there was a presumption that could be overcome but had not been? Correct. And so what I'm saying is what the district court was doing is requiring a compelling interest and substantial particularity, and I think he erred in saying that there has to be a specific threat. And that's why I'm saying that's like letting someone shoot first and ask questions later. If that were the standard, if there had to be a specific threat, then, I mean, that presumes that we just let everyone know that there was 5K1.1, and then if there's a threat that they're going to kill the person in prison or kill their family, then you conceal, which is totally contrary to the cat is out of the bag argument that the district court made relying on two Fourth Circuit cases. And I think it would be important for this court to give, I'm respectfully requesting that this court give guidance that this notion of cat out of the bag isn't a reason for not correcting something that is dangerous. So in this case, I asked the district court to sanitize the table of contents docket so that it wasn't available to everyone worldwide. Anyone on a smartphone or any device can log into PACER and see 5K1.1. An inmate with a smartphone can do that, or their family members can do it. So a narrow alternative, a lesser remedy certainly would be at the very least to get rid of those references in the docket because I view those as the most dangerous thing. Did the court apply the experience and logic test? I think what the court did was, no, I would say no. I think that the court did a hybrid and looked and kind of did a mishmash of the common law rule. Do we need to apply it, or should we assume that there is a qualified right of public access here? I will concede that there is a qualified right of public access to sentencing proceedings, but not to the documents involved here. So I'm drawing a distinction when we talk about 5K1.1. 5K1.1, you know, for 30 years, from its very beginning, from its birth, talked about safeguard procedures. In the comments to 5K1.1, it talks about how the court can have a sidebar or determine 5K1.1 under seal. Also, the statement of reasons is under seal, and the reason the statement of reasons for the sentence is under seal is specifically for this purpose, to protect 5K1.1 information. So you've conceded that there's a qualified right of public access to sentencing proceedings, but I think what you're arguing is that you're not conceding that that right extends to this type of proceeding, or are you arguing that it does and here it was overcome? My first argument is that it doesn't apply to 5K1.1s because those should be carved out and given special protection. I understand that there's some tension there with CBS. Well, CBS didn't involve this type of proceeding. That's correct. CBS was post-sentence Rule 35. Right. And CBS predated the Internet, which is really what courts are grappling with across the country. If we assume that the qualified right of public access does apply to this type of proceeding, this exact type of proceeding, what's your best argument that here the presumption was overcome? Your Honor, here the presumption was overcome first and foremost because we're talking about $656,000 worth of methamphetamine. We're talking about an international drug smuggling organization. We're talking about multiple trips of drugs from Mexicali, Mexico, into the United States. Also, an organization that is distributing methamphetamine in the Imperial Valley. In this case, John Doe was driving a load of methamphetamine worth $656,000, and unfortunately his wife and child were in the car at the time. The cooperation in this case was very specific. We don't have to decide that. I won't go into it, but it was. The government decided that by choosing to file a motion, so it doesn't seem to me that we would revisit that because the government crossed that threshold. Correct. So I think knowing what we know about who's a rat, all these different websites, and the fact that paper matters, having proof is what's required in prison in order to tax people and do all the horrible things that happen to people in prison. That alone, I think it was the Eastern District of Texas found, was sufficient to have an across-the-board rule that everything should be under seal. So I think in this case we have really strong facts showing we don't have what the district court required, which was a specific threat that he's going to get killed. If that's the standard, people are going to die. So I think a key case that you wrote, Your Honor, Judge Kristen, is United States v. Index newspapers, and in rereading it, I didn't appreciate it enough. I did cite it. That's the story of our lives. But I think it really, I mean, it was decided in 2014, and I think it shows the error of the district court in this case in refusing to redact. Well, it might point out, that case involved grand jury proceedings, and it might underscore, it seems to me, that the type of proceeding we're talking about matters a lot under the experience and logic test. I agree. And this is an issue of first impression. No court has ever looked at how do we specifically treat 5K1.1 documents where there is no media request. And, Your Honor, you also talked about it's not an all-or-nothing proposition. So I think refusing to seal is clinging to the past, as if blind to the brave new world foisted upon us by the Internet age. And it shows insufficient regard for possible deadly and dire consequences. I would like to reserve the rest of my time. Sure. We'll hear from the government. Thank you. May it please the Court, Daniel Zip on behalf of the United States. Your Honor, as to the first question, does the First Amendment apply to the documents at issue here, I think that question is answered by CBS Inc. This court held 30 years ago that Rule 35 materials, including those that outline a defendant's cooperation, are subject to a qualified right of First Amendment and common law public access. In light of that holding, we're not at liberty to sort of go through, again, the experience and logic test and answer that question again. Does the First Amendment apply to these type of documents? This court held as much in CBS. And you think there's no important distinction between the facts here and the facts in CBS? The DeLorean case? Between Rule 35 documents and 5K1.1 motions, no, there's not any distinction between the documents itself. It's the same thing. One of them happens at the court administration and case management. What about those admonitions there? What do we do with that? Very careful consideration has been given to this precise problem that is designed, it seems to me, to facilitate the government's ability to use this very important tool. Yes, Your Honor, and certainly the landscape has changed in the 30 years since CBS. My point is only that given that language in that case, neither the district court nor the government here could sort of disregard that and say that the First Amendment doesn't apply. I'm not suggesting that. Forgive me if I was unclear. If we decide that a qualified right exists, then what? If a qualified right exists, then the next question is, did the district court in this case abuse its discretion when balancing the compelling interest in sealing and determining whether there was a substantial likelihood of harm absent sealing? On that point, our position is that the district court in this case was within its discretion for two reasons. One, that the fact of the defendant's cooperation was already public in several forms. In the defendant's sentencing summary chart, it listed 5K. And then multiple times at the sentencing hearing, the court made reference to 5K in a specific context that made it clear that the 5K it was referring to was the government's recommendation based on the cooperation of the defendant. So in light of those already being in the public record, it wasn't an abuse of discretion for the court to say that there was not a substantial likelihood of harm by the additional 5K 1.1 reference in the government's papers as opposed to what was already in the record elsewhere. And secondly, the court was also within its discretion given the nature of the cooperation at issue in this case. This was a case where both parties agreed that there had not been any actual threats made against this defendant. And moreover, it was not the type of cooperation that would necessarily lend itself to threats or to retribution. What the defendant had offered was more in the way of background and general information about the organization that he was a part of. And unlike this court's decision in Doe, there was no indication that the defendant was going to testify against anyone or that this was sort of specific cooperation that would invite retribution from any party. Can I ask just out of curiosity, because I don't quite get it. Why are you even here defending this? Is this something you want this to be public? I'm really puzzled by that. Are you just doing a service to the court? You want to make sure that there's adversarial presentation? Or do you guys really want this information to be public? Because this is a really important tool. Yes, absolutely. So I am equally baffled. Your Honor, I guess the short answer is we're defending the district court's decision in this case because it's an abuse of discretion standard. And whether or not we agree with the court's decision on a clean slate, we can't concede that the district court's decision in this case was illogical or implausible or wholly without support and inferences in the record. Are there other defendants that you want to enter into these agreements with you going forward? Your Honor, that is certainly a government's interest in sealing in this case and in all cases. Not just the effect that it would have on the specific investigation at issue, but on a structural level, we don't have an interest or we have an interest in wanting people to cooperate. So it's an awkward position. Well, it's a pretty tepid position. I mean, you took one position in the trial court that reads really differently on appeal, Counsel. It's really, really differently on appeal. What about that? You mean, I don't understand. And I don't mean you personally, but your office makes the decision, and that's within your office's discretion to file this motion. So, you know, to the earlier conversation, I think we don't revisit that call. And that tells me that there was the degree of cooperation was substantial. This was that there had been. You've mentioned, I think, that there was no credible threat. But there were menacing remarks made, and that was part of the government's presentation earlier. But now it seems like you're really ready to walk away from this. Well, if I could clarify, Your Honor, the fact that we filed these publicly before the district court is a symptom of the fact that this specific district court requires all 5K memos to be filed in exactly the manner that the United States did. This was not a situation where we sort of independently said, hey, I think it would be a good idea to put 5K 1.1 in the record publicly. This is a court who's made it clear in all of his cases to our office that he will not accept 5K motions that are not filed in this public way. So it's not. I think that's helpful. That's helpful for us to know. Excuse me. And I appreciate that background. Could you provide a little more background for me? Because I didn't match up the dates, and I should have. Did this district court judge have the benefit of the 2016 Doe decision, or did they cross in the mail, so to speak? No. At the time of sentencing, Doe had not been decided yet. Okay. The government, as I understand the history in this case, at some point the defense asked that any references to 5K 1.1 be sealed. Is that correct? Was that at the sentencing hearing? The way that it worked timing-wise was the United States filed its motions publicly. Right. The next day, I think, defense filed a sort of short motion to seal those. I think they filed a last-minute motion to seal. Yes. And then two weeks later, on the morning of sentencing, filed sort of a more supplemental motion to seal, again, just the 5K 1.1 references. Did the government oppose that motion? It was my recollection that they did not oppose that motion. The record wasn't. Essentially, the prosecutor said, I just got this this morning. I haven't looked at it. And that was the extent of the discussion. Did it really have an opportunity to review it? He said he had not reviewed it. Okay. So. Well, I have just one question. Do you know what's going on with the public docket now? Have you looked at it recently? Because I guess when we tried to access it now, none of these documents are even shown. And I don't know if it was just the kind of access we had or if you guys knew what had happened with that. Because it's not like they're redacted. They are just not there. I assumed that that was a symptom of the appeal being sealed. I did the same thing. That's temporary. So, again, just to summarize, I think the law is clear. And I believe under index that would be that would not be acceptable. There'd be there'd be a public record that something had been filed. And I don't think that's contested. So so I'm saying that out loud so that if either one of you disagrees with me about that, I would need to know that for at least for my my part. So, okay. Just to summarize, Your Honor, the First Amendment clearly applies to these proceedings. Our position is only this, that the district court in this case was not was within its discretion. Its decision not to seal these documents was not implausible, illogical or wholly without support in the record. We certainly have an interest as as prosecutors in ensuring the privacy of our cooperators and making sure that this type of information isn't revealed and it isn't routinely revealed. But on the facts of this case, given the nature of the cooperation, the lack of threats and the other instances of 5K being mentioned on the record, we can't say that the district court's decision here was illogical. Thank you, counsel. Thank you. So I wanted to follow up, Judge Kristen, on I forgot when one of the things and I think you mentioned it as far as the threat here and why there was a, you know, what the particularity was made and it was abuse of discretion. And I forgot to mention that not only was his wife and child in the car, but at AOB page 9 I talk about there was a threat to his family if they, so he was threatened. Like if you do anything dirty, if you do us dirty, there was a threat. But did I misunderstand you earlier or did you misspeak earlier? Is your position that there was a threat? I thought earlier you said there wasn't. There wasn't a threat because of information being leaked out that he cooperated. There was a preemptive threat. I see. Okay. Thank you. And I think it's very misleading when the government says that the cat was out of the bag. And I addressed this at pages 11 through 14 of my reply brief. My filings did not put anyone on notice that John Doe was cooperating. They don't say 5K1.1, and the fact is that they are not public. In the Southern District of California, they are restricted. They are not available on PACER. You cannot see them. Only by going into the clerk's office can you see them, and they do not say 5K1.1. And to have my best possible clear answer to the court's question about what remedy is being sought, I would refer the court to page 76 through 78 I have in tables. My first remedy, I list – it's actually – I'm a lot more specific. There are six documents that I request to be sealed. And in the alternative, if the court decides not to seal them on page 77 through 78, I ask for redactions as a narrower restriction on if there is a First Amendment right to 5K1.1 documents. Can I get you to hang on just a minute? Because I thought that I had reviewed that, and I thought it was four, but it's six. Is that right? Have I got it? I want to make sure before I lose you that I've got this correct. Stock at 35, 36, 37, 42, 44, and 45. 76 to 78? Yeah, of the AOB. 76 to 78. You're opening brief. Okay, hang on. One time where paper would be a lot faster than an iPad. Okay. I see it. Thank you. And, Your Honor, Judge Soto, as far as the filing of the motions, as soon as I saw the docket said 5K1.1, I immediately filed – and in the transcript it says CURT, K-U-R-T, but I referred to it as a CURT motion later, as in short. I filed a very short motion because I wanted to do it very quickly to alert the district court that 5K1.1 was in PACER. And the district court immediately issued an order, because the district court has dealt with this issue before, immediately issued an order saying, no, I'm not going to redact or seal anything. And so then I had to very quickly, as quickly as I could, put together my 20-page motion, which I filed on the day of sentencing, and said I'm happy to continue this. The government did not have an opportunity to read it and said that he didn't have an opportunity to read it. And the district court said, no, we're going forward. Thank you. Anything further? Thank you both for your arguments today. We'll stand and recess. Thank you. All rise.
judges: Christen, Watford, Soto